NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3735
_____

FRANCISCO ERNESTO CASTILLO PAUCAR,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
Agency No. A098-479-582
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 7, 2013

Before: FUENTES, GREENBERG, and BARRY, Circuit Judges

(Opinion Filed: November 5, 2013)
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

Francisco Ernesto Castillo Paucar seeks review of a dismissal by the Board of

Immigration Appeals ("the BIA"), affirming the immigration judge's ("IJ") denial of

Paucar's request for adjustment of his status. For the reasons that follow, we deny Paucar's petition for review.

## I.

Paucar, a native of Ecuador, entered the United States without inspection in or about 1997. On August 7, 2003, Paucar's employer, Don Pepe Restaurant, submitted a request to the Department of Labor ("the DOL") that Paucar be substituted as the "alien beneficiary" of a labor certification previously approved for another employee. On February 16, 2010, Paucar applied to have his status adjusted to that of a legal permanent resident ("LPR"), pursuant to 8 U.S.C. § 1255(i). The United States Citizenship and Immigration Services ("the USCIS") denied his application on July 19, 2010.

Shortly thereafter, the Department of Homeland Security ("the DHS") initiated a removal proceeding against Paucar and served him with a Notice to Appear ("NTA"). Paucar appeared before an IJ, conceded removability as charged, and informed the IJ that he would seek relief from removal by reintroducing his application for adjustment of status to the court. Following the submission of written briefs, the IJ held that Paucar was not eligible for adjustment of status. On June 8, 2011, Paucar again appeared before the IJ, where he requested voluntary departure and preserved his right to appeal. The IJ granted Paucar's request for voluntary departure until July 8, 2011.

Paucar appealed to the BIA the IJ's denial of his application for adjustment of status. The BIA dismissed Paucar's appeal, and remanded the case to the IJ for further

proceedings regarding Paucar's request for voluntary departure.   Paucar then filed a petition for review with this Court.[1]

## II.

"Generally speaking, Congress has limited the use of the adjustment-of-status mechanism to lawfully present aliens . . . ." *Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 614 (4th Cir. 2010).  Under 8 U.S.C. § 1255(i), however, discrete categories of undocumented aliens are permitted to seek adjustment of status.  *Id.* at 616. Section 1255(i) has been amended several times by Congress, most recently on December 21, 2000.  In its most recent iteration, § 1255(i) provides, in relevant part, that an undocumented alien "who is the beneficiary . . . of . . . an application for a labor certification under section 1182(a)(5)(A) of this title that was filed pursuant to the regulations of the Secretary of Labor [on or before the sunset date of April 30, 2001] . . . may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence."  Beneficiaries permitted to seek adjustment of status pursuant to § 1255(i) are referred to as "grandfathered" aliens.

Pursuant to his authority to enforce and interpret the Immigration and Nationality Act ("the INA"), the Attorney General promulgated an interim rule on March 26, 2001, effective that date, amending the regulations governing eligibility for adjustment of status under § 1255(i). The interim rule clarified, *inter alia*,  that "[o]nly the alien who was the beneficiary of the application for the labor certification on or before April 30, 2001, will

---

[1] Despite the fact that the BIA remanded the case to the IJ, we have jurisdiction to review the BIA's determination pursuant to 8 U.S.C. § 1252(a)(1).  *See Yusupov v. U.S. Attorney General*, 518 F.3d 185, 195 (3d Cir. 2008).

be considered to have been grandfathered for purposes of filing an application for adjustment of status," and that "[a]n alien who was substituted for the previous beneficiary of the application for the labor certification after April 30, 2001, will not be considered to be a grandfathered alien." 66 F.R. 16383, 16389 (effective Mar. 26, 2001). The rule was published without notice and comment. The Attorney General provided the following explanation of why good cause existed to promulgate an interpretation of § 1255(i) in an expedited fashion:

> The implementation of this rule without prior notice and comment, and without a delayed effective date, is necessary to implement recently enacted statutory changes that took effect upon enactment on December 21, 2000. There is a very short window of opportunity (ending on April 30, 2001) provided by the new law for the filing of immigrant visa petitions and applications for labor certification, in order to preserve the ability of eligible aliens to adjust their status under Section 245(i) of the Act (8 U.S.C. 1255(i)). . . . It would be impractical and contrary to the public interest to publish a proposed rule or to delay the effective date of these procedural instructions, because the public comment period and a delayed effective date would consume most of the very limited time statutorily available for qualified applicants to take advantage of the new law.

*Id.* at 16387. This rule was codified at 8 C.F.R. § 245.10. *Id.* at 16388-89. The final rule, promulgated on December 9, 2002, is in all relevant respects identical to the interim rule.

Following the passage of the Homeland Security Act of 2002, the Attorney General promulgated a new rule, codified at 8 C.F.R. § 1245.10, that reproduced the relevant portions 8 C.F.R. § 245.10. *See* 68 Fed. Reg. 9824, 9842 (effective Feb. 28, 2003). Thus, although § 1245.10 now technically controls, the fate of that regulation is tied to the propriety of Attorney General's promulgation of § 245.10.

4

## III.

Because Don Pepe Restaurant did not seek to substitute Paucar as the alien beneficiary on its previously approved labor certification until April 2003, Paucar is patently not a grandfathered alien under Attorney General's current interpretation of § 1255(i). *See Kar Onn Lee v. Holder*, 701 F.3d 931, 933 (2d Cir. 2012) (explaining that § 245.10 "interpret[s] [§ 1255(i)] as applying only to beneficiaries actually listed on labor-certification applications as of April 30, 2001—not individuals who were later substituted as beneficiaries"). Paucar nonetheless argues that the IJ and BIA erred in failing to adjust his status. According to Paucar, § 245.10—and by extension, § 1245.10—runs afoul of the Administrative Procedure Act ("the APA"), because the Attorney General inappropriately issued an interim rule interpreting § 1255(i) without notice and comment. This argument fails for several reasons.

First, Paucar's contention that the Attorney General improperly waived notice and comment is time barred. Pursuant to 28 U.S.C. § 2401(a), "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." It is well established that the six-year statute of limitations applies to claims brought pursuant to the APA. *See, e.g.*, *Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 758 (8th Cir. 2009). Generally, "[t]he right of action first accrues on the date of the final agency action." *Harris v. FAA*, 353 F.3d 1006, 1009-10 (D.C. Cir. 2004). Here, that date was March 26, 2001, when the Attorney General published the interim rule. At the very latest, however, Paucar's right of action first accrued on August 7, 2004: On that date, Don Pepe Restaurant substituted

5

Paucar onto its labor certification, meaning Paucar was at that point directly affected by the Attorney General's interpretation of § 1255(i) and should have been aware of his right to challenge it. *See Kimbell*, 558 F.3d at 759 ("[A] plaintiff's claim accrues for the purposes of § 2401(a) when the plaintiff either knew, or in the exercise of reasonable diligence should have known, that [he or she] had a claim." (internal quotation marks and citations omitted)). But Paucar did not challenge the waiver of notice and comment until he filed his petition for review in this Court on January 18, 2013, more than six years beyond either possible accrual date.

Paucar concedes that APA claims are subject to a six-year statute of limitations, but argues that the statute of limitations does not apply to his challenge of § 245.10. Because § 2401(a) applies only to "civil action *commenced* against the United States," argues Paucar, that statute does not affect his ability to collaterally attack § 245.10 in the context of his removal proceeding. We disagree. Again, Paucar was capable of challenging the regulation in district court since at least 2004, but failed to do so. *Cf. M.B. v. Quarantillo*, 301 F.3d 109, 111-13 (3d Cir. 2002). Having sat on his right to seek review of the regulation, Paucar is not now permitted to circumvent the six-year statute of limitations by collaterally attacking the regulation during his removal proceeding. The Ninth Circuit's opinion in *United States v. Lowry*, 512 F.3d 1194 (9th Cir. 2008), is instructive. There, the court precluded a criminal defendant from collaterally attacking an agency decision as part of his defense, on the grounds that the tactic amounted to a sidestepping of the six-year statute of limitations. *Id.* at 1202-03. The reasoning in *Lowry* applies in this case.

6

Second, even if this action were not untimely, Paucar's attack on 8 C.F.R. § 245.10 would nonetheless fail, as the Attorney General's stated rationale for foregoing notice and comment survives both arbitrary and capricious and *de novo* review. *See United States v. Reynolds*, 710 F.3d 498, 509 (3d Cir. 2013) (declining to determine which standard of review applies). Notice and comment may be waived "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B). As we recently explained, an agency has good cause to waive notice and comment where, *inter alia*, "an imminent, externally imposed deadline or the existence of an emergency" created urgency to promulgate the rule. *Reynolds*, 710 F.3d at 512.

Here, the Attorney General interpreted § 1255(i), which was enacted on December 21, 2000, as precluding an alien from being considered grandfathered unless he listed as the beneficiary of a labor certification by or before April 30, 2001. As Paucar now concedes, this interpretation of § 1255(i) was reasonable. Indeed, given § 1255(i)'s "apparent purpose" of providing "immigrants with a limited opportunity to obtain and benefit from grandfathered status by the 'sunset' date of April 30, 2001," the Attorney General's reading of the statute "makes more sense" than a reading extending the grandfather provision to any beneficiaries substituted onto labor certifications after the sunset date. *Kar Onn Lee*, 701 F.3d at 937; *see also Suisa v. Holder*, 609 F.3d 314, 20 (4th Cir. 2010) (noting that permitting aliens substituted after the sunset date to qualify as grandfathered would "frustrate[]" the "plain[]" purpose of the statute).

7

Having reasonably interpreted the regulation to preclude the substitution of beneficiaries of labor certifications filed before the sunset date, the Attorney General had good cause to publish the interim rule without notice and comment. The regulation was published in the Federal Register on March 26, 2001; thus, had the Attorney General not applied the good cause exception, § 245.10 would have been promulgated no earlier than April 25, 2001. *See* 5 U.S.C. § 553(d) (providing that an agency must publish a rule not less than 30 days before its effective date). This would have left aliens not yet substituted onto a labor certification who wished to take advantage of § 1255(i) insufficient time to file the requisite paperwork by the sunset date. By waiving notice and comment, the Attorney General gave aliens hoping to become grandfathered under § 1255(i) an opportunity to secure the necessary employer or family sponsor and to file the requisite visa petition or labor certification. Doing so was clearly within the public interest, given that aliens and their employers may well have been under the impression—prior to the promulgation of the Attorney General's rule—that aliens could retroactively take advantage of the April 30, 2001 sunset date set forth in § 1255(i).

In short, the importance of providing adequate notice to aliens of the Attorney General's interpretation of § 1255(i) constituted good cause under 5 U.S.C. § 553(b)(B). The Attorney General therefore acted properly when he promulgated the interim rule interpreting the statute without notice and comment.

## IV.

For the foregoing reasons, Paucar's petition for review is denied.